IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAYNE PRATER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, ET AL. | : | No. 11-1618 |

**MEMORANDUM**

**Padova, J.**                                                                                                          **November 8, 2012**

Plaintiff Wayne Prater is an inmate in the Philadelphia Prison System. He commenced this action under 42 U.S.C. § 1983 and state law, asserting that he has been denied access to the prison law library and his lawyers, and that prison officials retaliated against him for filing grievances. Defendants the City of Philadelphia, Commissioner Louis Giorla, Warden John P. Delaney, Deputy Warden Whitaker, Lieutenant Knight, Lieutenant Hamilton, Correctional Officer Lock, and Correctional Officer Faison have filed a Motion for Summary Judgment, seeking judgment in their favor on all of Plaintiff's claims. For the following reasons, we grant Defendants' Motion.

I.      BACKGROUND

Plaintiff has been incarcerated in the Philadelphia Prison System since December 4, 2009, with the sole exception being a brief period from July 15, 2010 to August 22, 2010, when he was out on bail. (See Inmate Housing Summary ("Housing Summ.") at 1-8, attached as Ex. A to Summ. Judg. Mot.) In September 2009, prior his incarceration, Plaintiff commenced a civil action in the Philadelphia Court of Common Pleas, seeking a partition of property. (See Pl. Ex. I at 2.) According to the Complaint in that action, Plaintiff had an equity interest in a property owned by the defendant, and requested that the court force the sale of the property, so that Plaintiff could monetize his equity interest. (Id. at 5-6; see also Pl. Dep. at 10-11, attached as Ex. B to

Summ. Judg. Mot.)  Plaintiff's attorney in the partition action was Tracy Brandeis-Roman.  (See Pl. Dep. at 11.)

The Philadelphia court dockets reflect that Plaintiff's December 2009 incarceration was due to a variety of criminal charges arising from conduct on November 30, 2009, including alleged stalking and criminal mischief, as well as charges arising from conduct on December 2, 2009, including alleged burglary.  (See Phila. Mun. Ct. Dockets, Case Nos. MC-51-CR-0055256-2009, MC-51-CR-0057620-2009.)  Between December 2009 and his release on July 15, 2010, Plaintiff was incarcerated very briefly at Curran Fromhold Correctional Facility ("CFCF") and then moved to the House of Corrections.  (See Housing Summ. at 5-8.)

On August 20, 2010, while out of state custody, Plaintiff was arrested for a variety of new criminal offenses, including burglary and aggravated assault.  (See Phila. CCP Docket, Crim. A. No. CP-51-CR-0000375-2011 ("Phila. CCP Crim. Docket");[1] see also Phila. Mun. Ct. Docket, Case No. MC-51-CR-0036492-2010.)  The Court appointed George Yacoubian, Esq. to represent Plaintiff in that criminal matter.  (Phila. CCP Crim. Docket at 9.)  After his August arrest, Plaintiff was incarcerated at CFCF.  (See Housing Summ. at 2-5)

While at CFCF, Plaintiff and his fellow inmates were subjected to "continuous" lockdowns, during which they were not allowed access to the law library or permitted to make legal calls from the library between 7 a.m. and 3 p.m.  (See Decls. of J. Swain and O. Sutton, Pl. Exs. J and K.)  At the same time, Plaintiff admits that, at least in late 2011, he was able to visit the CFCF law library four to six times per month.  (Pl . Dep. at 16-17.)

---

[1] Defendants have attached a copy of this docket as Ex. C to their Summary Judgment Motion.  However, we have referred to the more updated, public version of that document, which is available on Pennsylvania's Unified Judicial System Webportal.

On October 30, 2010, Plaintiff sent a Memorandum to Defendant Lieutenant Knight. (Pl. Ex. F.) Plaintiff states in the Memorandum that, during the week of October 11, 2010, he attempted to get the attention of a social worker, seeking access to her office in order to call one of his attorneys. (Id. at ¶ 3.) Plaintiff asserts that the social worker responded that Plaintiff could not make calls from her office. (Id.)

In November 2010, the Philadelphia Court of Common Pleas dismissed Plaintiff's partition action. (See Phila. CCP Civ. Div. Docket, Sept. Term 2009, No. 001104 ("Phila. Civ. Docket"), at 9). According to Plaintiff, the dismissal was due to his inability to contact his attorney. (Pl. Dep. at 8, 12, 15; Pl. Resp. to Def. Interrogs. at ¶ 2a, Pl. Ex. L at 15.) The civil docket reflects that Ms. Brandeis-Roman stopped communicating with the court and that the case was non-prossed. (See Phila. Civ. Docket at 7-9.)

On December 22, 2010, Defendant Commissioner Louis Giorla wrote a letter to Plaintiff, stating in response to a request from Plaintiff that he would make both Mr. Yacoubian's and Ms. Brandeis-Roman's phone numbers available to Plaintiff to make legal phone calls. (Pl. Ex. G.) However, on January 31, 2011, Commissioner Giorla wrote Plaintiff a second letter, stating that Mr. Yacoubian's name could not be included in the legal database because Mr. Yacoubian was not a "locally based" attorney. (Pl. Ex. H.) Commissioner Giorla recommended that Plaintiff add Mr. Yacoubian's number to his personal phone list, which would enable Plaintiff to call Mr. Yacoubian either collect or debit. (Id.)

On June 3, 2011, prison officials charged Plaintiff with "rioting or inciting others to riot," among other offenses. (See Inmate Misconduct Summary ("Misconduct Summ.") at 2, attached as Ex. E to Summ. Judg. Mot.) The report of inmate misconduct states that Plaintiff overheard a

fellow inmate "enticing a riot" and then "went into the day room and stated to the inmates, 'Now is our chance to do what we gotta do.' 'Let's get started.'" (Pl. Ex. L at 2.) According to the report, when officers warned Plaintiff not to get involved, Plaintiff cursed at and was insubordinate to the officers. (Id.) Prison records reflect that Plaintiff was placed in Administrative Segregation that same day. (See Ex. D to Summ. Judg. Mot. at 3.) At a hearing on June 8, Plaintiff was ultimately found guilty of only two minor infractions. (See Misconduct Summ. at 1-2.) The adjudication was processed on June 11, 2011, and Plaintiff was returned to the general population on June 12, 2011. (Id. at 2; Housing Summ. at 3.) In the meantime, however, Plaintiff filed a grievance, complaining that he had not been promptly returned to the general population after his hearing but, instead, remained in punitive segregation. (Pl. Ex. L at 7.)

In March of 2011, Plaintiff commenced the instant action. In the Amended Complaint, which was filed in January of 2012, Plaintiff alleges, among other things, that he was systematically deprived of access to the law library and denied phone access to his attorneys, in violation of his constitutional rights. He also alleges that his placement in administrative segregation in June 2011 was in retaliation for grievances he had submitted.

On April 3, 2012, Plaintiff was moved from CFCF to the Philadelphia Industrial Corrections Center. (Housing Summ. at 2.) Three weeks later, on April 24, 2012, Mr. Yacoubian withdrew as Plaintiff's counsel in his Philadelphia Court of Common Pleas criminal matter, and Gary Server was appointed to represent Plaintiff. (See CCP Crim. Docket at 12-13.) On June 28, 2012, a Philadelphia jury found Plaintiff guilty of all charges in his pending criminal matter. (See id. at 15.) As of November 1, 2012, Plaintiff had not yet been sentenced. (See id. at 16.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. In ruling on a summary judgment motion, we "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 276 (3d Cir. 2001) (internal quotation marks omitted). If a reasonable fact finder could find in the nonmovant's favor, summary judgment may not be granted. Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 130 (3d Cir. 2002).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials [that the moving party has cited] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

"'While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla.'" Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 270 (3d Cir. 2007) (quoting Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005)). "Evidence that is merely colorable or not significantly probative is insufficient to create a genuine issue of material fact for trial." West v. Lincoln Benefit Life Co., 509 F.3d 160, 172 (3d Cir. 2007) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and El v. Se Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007)).

## III. DISCUSSION

Plaintiff's Amended Complaint asserts six claims against Defendants: an access to the courts claim under 42 U.S.C. § 1983, a retaliation claim under § 1983, and state law claims for harassment, retaliation, intentional infliction of emotional distress, and malicious prosecution. Defendants argue in their Motion for Summary Judgment that judgment should be entered in their favor because certain claims are not legally cognizable and others find no support in the record evidence.

### A. Access to Courts

Plaintiff asserts in his access to the courts claim that Defendants inhibited his opportunity to pursue (1) his civil partition of property action, and (2) an appeal in his criminal action. Defendants argue that we should enter judgment in their favor on both aspects of this claim because an individual has no right of access to the courts in connection with a civil partition action,

and because Plaintiff has not proven any actual injury in connection with his alleged denied access to the criminal courts.

A plaintiff's constitutional right of access to the courts is embodied in the First and Fourteenth Amendments. Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (citing Lewis v. Casey, 518 U.S. 343, 346 (1996)). However, prisoners have a right of access in connection with only two types of cases – "challenges (direct or collateral) to their sentences" and challenges involving conditions of confinement. Id. (citing Lewis, 518 U.S. at 354-55). Defendants violate the right of access when their "actions . . . inhibit[] [a prisoner's] opportunity to present a past legal claim." Id. To prove a claim based on denied access, a prisoner must establish that "(1) [he] suffered an 'actual injury' – that [he] lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that [he has] no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit.'" Id. (quoting Christopher v. Harbury, 536 U.S. 402, 415 (2002)).

Applying this law, Defendants correctly argue that a prisoner has no constitutional right of access to the courts in connection with a civil action that is neither a habeas action nor an action concerning conditions of confinement. Id. (citing Lewis, 518 U.S. at 354-55). Thus, Plaintiff has no viable right of access claim concerning his civil partition of property action, and we enter judgment in Defendants' favor on that aspect of Plaintiff's right of access claim. See Lewis, 518 U.S. at 355 (stating that the Constitution "does not guarantee inmates the wherewithal to transform themselves into litigating engines.")

We also agree with Defendants that Plaintiff has failed to meet his burden of proving a right of access claim in connection with his criminal case, because Plaintiff points to no evidence

7

that he suffered "actual injury."  Although Plaintiff has submitted record evidence that suggests that he was inhibited from contacting Mr. Yacoubian by phone and that he was denied access to the CFCF law library, there is no record evidence to support a conclusion that these limitations prevented Plaintiff from pursuing "a 'nonfrivolous' or 'arguable' underlying claim."  Monroe, 536 F.3d at 206 (quoting Christopher, 536 U.S. at 415).  Plaintiff asserts that he "lost [his] appeal due to no contact with then Court Appointed Attorney Mr. Yacoubian," but there is no evidence in the record of any criminal appeal in which Mr. Yacoubian represented Plaintiff.  (Pl. Resp. to Summ. Judg. Mot. at 3).  Moreover, the record does not reveal what claims, if any, Plaintiff would have pursued in an appeal, much less establish any claims that were either "nonfrivolous" or "arguable."  Under these circumstances, Plaintiff has failed to point to evidence that supports his claim that his constitutional right of access to the courts was violated in connection with his criminal case.[2]

For the foregoing reasons, we grant Defendants' Motion for Summary Judgment insofar as it pertains to Plaintiff's right of access claim under § 1983, and enter judgment in Defendants' favor on that claim.

**B. Retaliation**

Plaintiff also asserts a retaliation claim under § 1983, arguing that his placement in administrative segregation from June 3, 2011 to June 12, 2011, was retaliation for his filing of grievances.  (Am. Compl. ¶ 22.)  Defendants argue in their summary judgment motion that

---

[2] We also note that, at least to the extent that Plaintiff's claim rests on lack of access to the law library, he cannot establish "actual injury" because case law makes clear that where, as here, a plaintiff is represented by court appointed counsel, that representation assures him meaningful access to the courts, thus satisfying his constitutional right of access.  See, e.g., Demeter v. Buskirk, Civ. A. No. 03-790, 2003 WL 22416045, *3 (E.D. Pa. Oct. 20, 2003) (citations omitted).

8

judgment should be entered in their favor on this claim because Plaintiff has failed to adduce any evidence that retaliation was the motivating factor in the decision to discipline him.

"To prevail on a retaliation claim, the prisoner must prove: (1) that the conduct leading to the alleged retaliation was constitutionally protected; (2) that he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that his protected conduct was a substantial or motivating factor in the decision to discipline him." Baker v. Williamson, 453 F. App'x 230, 234 (3d Cir. 2011) (citing Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)). "However, 'prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" Id. (quoting Rauser, 241 F.3d at 334). In reviewing prison officials' rationale, we employ a "'deferential standard,'" which "take[s] into account 'that the task of prison administration is difficult, and that courts should afford deference to decisions made by prison officials . . . who possess the necessary expertise.'" DeFranco v. Wolfe, 387 F. App'x 147, 155 (3d Cir. 2010) (quoting Rauser, 241 F.3d at 334).

In support of his assertion that he was written up and placed in administrative segregation in retaliation for filing grievances, Plaintiff points to the content of his own prison grievances and his disciplinary hearing appeal, in all of which he asserts that he was accused of starting a riot and written up for doing so in retaliation for putting prior grievances under the major's door. (June 3, 2011 Grievances, Pl. Ex. L at 3, 5; Disc. Hrg. Appeal, Pl. Ex. L at 6.) There is, however, no record evidence to support these self-serving assertions that his segregation was retaliatory, including no evidence that Plaintiff actually submitted grievances in the weeks leading up to the June 3 incident. See Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 407 (E.D. Pa. 2000)

9

("Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." (citations omitted)). Moreover, the official prison paperwork supports a conclusion that Plaintiff was written up and placed in segregation for perceived disciplinary infractions. As noted above, the official prison paperwork reflects that two prison correctional officers observed Plaintiff encouraging other inmates to riot and that it was this observed conduct, along with Plaintiff's disrespect for the officers when confronted, that were the reasons for Plaintiff's write-up. (Pl. Ex. L at 2.) The records further reflect that Plaintiff was placed in administrative segregation because he was charged with a "critical" disciplinary infraction, that he was ultimately convicted of a minor infraction, and that he was returned to the general population as soon as the prison had "processed" his adjudication. (See Special Management Summary at 4, attached as Ex. D to Summ. Judg. Mot.; Housing Summ. at 3.)

Because we give deference to the administrative discretion of prison officials, and because Plaintiff fails to point to any evidence to satisfy his burden of establishing that he was actually written up in retaliation for filing grievances, we conclude that Plaintiff has failed to make a factual showing sufficient to establish that Defendants engaged in retaliation. We therefore enter judgment in Defendants' favor on Plaintiff's retaliation claim under § 1983.

### C. State Law Claims -- Harassment, Retaliation, and Intentional Infliction of Emotional Distress

In Plaintiff's "Second Cause of Action," entitled "Supplemental State Claims," Plaintiff contends that "the acts and conduct of . . . Defendants. . . constitute a lack of ethical proficiency, a campaign of harassment, retaliation, . . . and intentional infliction of emotional distress" ("IIED").[3]

---

[3] The Amended Complaint also references a claim of "malicious persecution," but Plaintiff has not referenced this claim in his other filings, and Defendants have not specifically addressed

10

(Am. Compl. ¶ 27.) Defendants argue that the first two claims (harassment and retaliation) fail as a matter of law, and that the third claim (IIED) is not supported by record evidence.

Defendants are correct that the harassment and retaliation claims are not cognizable under Pennsylvania law. First, the law is clear that Pennsylvania recognizes no cause of action in tort for "harassment." Sobel v. Wingard, 531 A.2d 520, 522-23 (Pa. Super. Ct. 1987) (citing D'Angelo v. Fortney, 515 A.2d 594, 596 (1986)); Keahey v. Bethel Twp., Pa., Civ. A. No. 11-7210, 2012 WL 478936, at *12 (E.D. Pa. Feb. 15, 2012) ("Harassment is not . . . recognized as an independent cause of action in Pennsylvania." (citations omitted)). Similarly, we are aware of no Pennsylvania common law cause of action for "retaliation" outside of a claim for wrongful discharge in the employment context. See also Hoshak v. Sysco Food Servs. of Pittsburgh, LLC, Civ. A. No. 06-176, 2008 WL 2944609, at *7 (W.D. Pa. July 28, 2008) ("This Court has not found, and the parties have not cited to, any Pennsylvania appellate cases recognizing a common law cause of action for retaliation based upon anything but wrongful discharge.") Accordingly, both the harassment claim and the retaliation claim fail as a matter of law.

Plaintiff's third state law claim, for IIED, finds no support in the summary judgment record. In Pennsylvania, a legally cognizable claim for IIED must be supported by "competent medical evidence." Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 995 (Pa. 1987); see also Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 80 (3d Cir. 1989) ("Pennsylvania requires that

---

the claim in their summary judgment motion. Id. In any event, a claim of malicious prosecution requires proof that "'the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice,'" Brockington v. City of Phila., 354 F. Supp. 2d 563, 569 (E.D. Pa. 2005) (quoting Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir. 2000)), and the summary judgment record contains no evidence of such malice or illicit purpose. Accordingly, even if Plaintiff still intends to pursue a malicious prosecution claim, the record evidence provides no support for such a claim.

competent medical evidence support a claim of alleged intentional infliction of emotional distress." (citing Kazatsky, 527 A.2d at 995) (additional citation omitted)). Here, the record contains no evidence that Plaintiff received medical treatment for emotional distress suffered as a result of Defendants' conduct. Plaintiff has therefore failed to make a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which [Plaintiff] will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

We therefore grant Defendants' Motion for Summary Judgment as to Plaintiff's three state law claims and enter judgment in favor of Defendants on those claims.

## IV. CONCLUSION

For the foregoing reasons, we grant Defendants' Motion for Summary Judgment in its entirety and enter judgment in Defendants' favor and against Plaintiff.[4] An appropriate order follows.

BY THE COURT:

/s/ John R. Padova, J.

John R. Padova, J.

---

[4] Plaintiff has filed a Motion for Appointment of Counsel, in which he asserts that his ability to litigate his case is limited by his imprisonment and that appointed counsel will better enable him to present evidence and cross-examine witnesses a trial. We have discretion under 28 U.S.C. § 1915(e) to appoint counsel for indigent civil litigants. However, we decline to exercise that discretion here because we conclude that Plaintiff's claims have no "arguable merit in fact and law" and there will be no trial. Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993). We therefore deny Plaintiff's Motion for Appointment of Counsel.