IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WAYNE PRATER : CIVIL ACTION
:
v. :
:
CITY OF PHILADELPHIA, et al. : No. 11-1618

**MEMORANDUM**

**Padova, J.**                                                                                           June 1, 2015

Plaintiff Wayne Prater is a state prisoner, who has asserted constitutional claims pursuant to 42 U.S.C. § 1983 against the City of Philadelphia and several prison officials, based on treatment he received while he was a pretrial detainee.[1] The parties have filed cross-motions for summary judgment. For the following reasons, we grant Defendants' Motion in part and deny it in part, and we deny Plaintiff's Motion in its entirety.

We previously granted summary judgment in favor of Defendants on all claims in a November 8, 2012 Memorandum and Order. Plaintiff appealed that Order and, in an October 8, 2013 Opinion and Order, the United States Court of Appeals for the Third Circuit affirmed in part, vacated in part, and remanded the case for further proceedings. See Prater v. City of Philadelphia, 542 F. App'x 135, 139 (3d Cir. 2013). The Third Circuit directed us to address on remand two surviving claims: (1) Plaintiff's claim for nominal and/or punitive damages under the Sixth Amendment, based on Defendants' alleged interference with Plaintiff's right to assistance by his criminal counsel, and (2) Plaintiff's claim under the First and Fourteenth Amendments that Defendants violated his right of access to the courts by restricting access to the prison library and impeding his ability to contact his civil attorney in connection with a partition action that he was

---

[1] In addition to the City of Philadelphia, the Defendants are Commissioner Louis Giorla, Warden John P. Delaney, Deputy Warden Whitaker, Lieutenant Knight, Lieutenant Hamilton, Correctional Officer Lock, and Correctional Officer Faison.

pursuing. Id. at 138. We gave the parties the opportunity to file renewed summary judgment motions, taking into consideration the Third Circuit's Opinion, and both Plaintiff and Defendants filed renewed Motions.[2] We address those renewed Motions here.

## I. BACKGROUND

Plaintiff has been incarcerated in various Pennsylvania prisons since December 4, 2009, with the sole exception being a brief period from July 15, 2010 to August 22, 2010, when he was out on bail. (See Inmate Housing Summary ("Housing Summ.") at 1-8, attached as Ex. A to Defs.' Renewed Summ. J. Mot. ("Defs.' SJ Mot.").) In September 2009, prior to his incarceration, Plaintiff commenced a civil action in the Philadelphia Court of Common Pleas, seeking a partition of property. (See Phila. CCP Civ. Div. Docket, Sept. Term 2009, No. 1104 ("Phila. Civ. Docket"), at 2, attached as Ex. D to Defs.' SJ Mot.) His attorney in that action, who was privately retained, was Tracy Brandeis-Roman, Esq. (See Pl.'s Dep. at 11-12, attached as Ex. B to Defs.' SJ Mot.) According to the Complaint in the partition action, Plaintiff had an equity interest in a property owned by the defendant in that case, and requested that the court force the sale of the property, so that Plaintiff could monetize his equity interest. (Compl. for Partition ¶¶ 5-6, 8, attached as Ex. C to Defs.' SJ Mot.; see also Pl.'s Dep. at 10-11.) Plaintiff admitted at his deposition, however, that his name is neither on the property's deed nor on its mortgage. (Pl.'s Dep. at 9.)

---

[2] In conjunction with his renewed Motion, Plaintiff also filed a Request for Appointment of Counsel. We granted that request by instructing the Clerk of Court to make the case available for review and selection by a volunteer attorney on the Prisoner Civil Rights Panel and, in the meantime, we ordered the case placed in civil suspense. However, after approximately eleven months had passed and no attorney had volunteered to represent Plaintiff, we instructed the Clerk of Court to remove the case from the Court's "extranet" site from which volunteer attorneys select cases, and we restored the case to our trial docket. Plaintiff therefore remains *pro se*.

Between December 2009 and his initial release on July 15, 2010, Plaintiff was incarcerated very briefly at Curran Fromhold Correctional Facility ("CFCF") and then moved to the House of Corrections. (See Housing Summ. at 5-8.) On August 20, 2010, while out of state custody, Plaintiff was arrested for a variety of new criminal offenses, and he was re-incarcerated at CFCF. (See Phila. CCP Docket, Crim. A. No. CP-51-CR-0000375-2011 ("Phila. CCP Crim. Docket"); Housing Summ. at 2-5; see also Phila. Mun. Ct. Docket, Case No. MC-51-CR-0036492-2010.) The court appointed George Yacoubian, Esq. to represent Plaintiff in that criminal matter. (Phila. CCP Crim. Docket at 9.)

While at CFCF, Plaintiff and his fellow inmates were subjected to "continuous" lockdowns, during which they were not permitted to access the law library or to make legal calls from the library between 7:00 a.m. and 3:00 p.m. (See Decls. of J. Swain and O. Sutton, Pl.'s Exs. J & K.[3]) At the same time, Plaintiff admits that, at least in late 2011, he was able to visit the CFCF law library four to six times per month. (Pl.'s Dep. at 16-17.)

On October 30, 2010, Plaintiff sent a memorandum to Defendant Lieutenant Knight. (Pl.'s Ex. F.) Plaintiff states in the memorandum that, during the week of October 11, 2010, he attempted to get the attention of a social worker, seeking access to her office in order to call one of his attorneys. (Id. ¶ 3.) Plaintiff asserts that the social worker responded that Plaintiff could not make calls from her office. (Id.)

In November 2010, the Philadelphia Court of Common Pleas dismissed Plaintiff's partition action. (See Phila. Civ. Docket at 9.) According to Plaintiff, the dismissal was due to his

---

[3] Plaintiff filed all of his exhibits in response to Defendants' initial Summary Judgment Motion, which was filed in 2012. Those exhibits are docketed at Docket Nos. 30 and 32.

3

inability to contact his attorney. (Pl.'s Dep. at 8, 12, 15; Pl.'s Resp. to Defs.' Interrogs. ¶ 2a, Pl.'s Ex. L.) The civil docket reflects that the court conducted a case management conference on December 15, 2009, and that a scheduling order was entered at that time. (See Phila. Civ. Docket at 4-5.) There was no further meaningful activity in the case until June 15, 2010, when the court issued an Order stating that Ms. Brandeis-Roman had failed to appear at a mandatory pretrial settlement conference on June 2, 2010, and that the court was imposing a sanction of $100.00, payable within thirty days. (Id. at 7.) The Order warned that "continued failure to appear will result in the imposition of further sanctions including dismissal of this action . . . ." (Id.) The next substantive docket entry is on August 30, 2010, when the court entered an Order, which issued to Ms. Brandeis-Roman a rule returnable for failure to comply with the court's June 14, 2010 Order. (Id. at 8.) The Order further required Ms. Brandeis-Roman to appear at a hearing on November 8, 2010, and stated that failure to appear could result in the imposition of appropriate sanctions, including additional fines, dismissal of the action, or entry of a default judgment. (Id.) The docket reflects that, on November 8, 2010, the court ordered the case non-prossed due to Ms. Brandeis-Roman's failure to appear at the hearing to show cause why she had not complied with the court's June 14, 2010 sanction order.[4] (Id. at 9.)

Approximately six weeks later, on December 22, 2010, Defendant Commissioner Louis Giorla wrote a letter to Plaintiff, stating (apparently in response to a request from Plaintiff) that he would make both Mr. Yacoubian's and Ms. Brandeis-Roman's phone numbers available to

---

[4] We note that Plaintiff has asserted that his case was dismissed because he did not appear in court and was unable to contact Ms. Brandeis-Roman. (Pl.'s Dep. at 8, 12; see also id. at 15 (stating that, when his partition action was "thrown out," "the judge made a statement that [Plaintiff needed] to be in the courtroom").) However, the docket makes clear that the court dismissed the case not because Plaintiff did not appear, but because Ms. Brandeis-Roman failed to appear and/or to comply with the court's Orders.

4

Plaintiff to make legal phone calls. (Pl.'s Ex. G.) However, on January 31, 2011, Commissioner Giorla wrote Plaintiff a second letter, stating that Mr. Yacoubian's name could not be included in the legal database because Mr. Yacoubian, who had a phone number starting with a (610) prefix, was not a "locally based" attorney. (Pl.'s Ex. H.) Commissioner Giorla recommended that Plaintiff add Mr. Yacoubian's number to his personal phone list, which would enable Plaintiff to call Mr. Yacoubian either collect or debit. (Id.) According to Plaintiff, Mr. Yacoubian was aware that Plaintiff was unable to call him and said something to the prison, but the prison did nothing to remedy the problem. (Pl.'s Dep. at 19-20.)

In March of 2011, Plaintiff commenced the instant action. In the Amended Complaint, which is dated January 24, 2012, Plaintiff alleges, among other things, that he was systematically deprived of access to the law library and denied phone access to Mr. Yacoubian and Ms. Brandeis-Roman, in violation of his constitutional rights.

On April 3, 2012, Plaintiff was moved from CFCF to the Philadelphia Industrial Corrections Center. (Housing Summ. at 2.) Three weeks later, on April 24, 2012, Mr. Yacoubian withdrew as Plaintiff's counsel in his Philadelphia Court of Common Pleas criminal matter, and Gary Server was appointed to represent Plaintiff. (See CCP Crim. Docket at 12-13.) On June 28, 2012, a Philadelphia jury found Plaintiff guilty of all charges in his pending criminal matter. (See id. at 17.) Plaintiff was sentenced on November 2, 2012. (See id. at 18.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A

5

factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. In ruling on a summary judgment motion, we "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 276 (3d Cir. 2001) (internal quotation marks omitted). If a reasonable fact finder could find in the nonmovant's favor, summary judgment may not be granted. Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 130 (3d Cir. 2002).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials [that the moving party has cited] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

"'While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla.'" Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 270 (3d Cir. 2007) (quoting Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005)). "Evidence that is merely

colorable or not significantly probative is insufficient to create a genuine issue of material fact for trial." West v. Lincoln Benefit Life Co., 509 F.3d 160, 172 (3d Cir. 2007) (citing Anderson, 477 U.S. at 248, and El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007)).

## III. DISCUSSION

As noted above, the two claims that the Third Circuit has directed us to address on remand are (1) Plaintiff's Sixth Amendment claim that Defendants interfered with his right to criminal counsel, and (2) Plaintiff's First and Fourteenth Amendment claim that Defendants denied him access to the courts in connection with his civil partition case.

### A. Sixth Amendment Claim

Under the Sixth Amendment, a pretrial detainee has a right to utilize counsel to defend against a criminal case that the state has brought against him. Benjamin v. Fraser, 264 F.3d 175, 186 (2d Cir. 2001). With respect to restrictions on attorney contact with clients, "[t]he Supreme Court [has] held that 'inmates must have a reasonable opportunity to seek and receive the assistance of attorneys' and that [prison] '[r]egulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid.'" Id. at 184 (fourth alteration in original) (quoting Procunier v. Martinez, 416 U.S. 396, 419 (1974)). Thus, where an institutional restriction impedes a pretrial detainee's access to criminal counsel, "'the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.'" Id. at 187 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)). A prison regulation restricting a pretrial detainee's contact with his attorney will be unconstitutional where it "'unreasonably burden[s] the inmate's opportunity to consult with his attorney and to prepare his defense.'" Id. (quoting Wolfish v. Levi, 573 F.2d 118, 133 (2d Cir. 1978)).

7

Here, we liberally read Plaintiff's claims to allege that his Sixth Amendment rights were violated by prison regulations that (1) allowed for frequent lockdowns that interfered with phone calls, (2) prohibited attorneys who were not "local," including Plaintiff's criminal counsel, from being placed on inmates' legal call lists, (3) did not provide a prisoner mailbox for prison mail, but instead provided that mail be given to a correctional officer, who, on at least one occasion, threw out Plaintiff's legal mail. The Third Circuit already determined on appeal that Plaintiff cannot obtain injunctive relief for any of these alleged Sixth Amendment violations because he is no longer housed at CFCF, where the violations allegedly occurred, and also cannot obtain any damages that necessarily imply the invalidity of his June 28, 2012 conviction in light of the Supreme Court's holding in Heck v. Humphrey. Prater, 542 F. App'x at 138 (citing Heck v. Humphrey, 512 U.S. 477 (1994) (prohibiting claims that necessarily imply the invalidity of an conviction)). It also determined, however, that Plaintiff may seek nominal and/or punitive damages "to the extent [that he] can show that his Sixth Amendment claim does not imply the invalidity of his conviction." Id. We therefore consider Plaintiff's claim for nominal and punitive damages arising from the alleged Sixth Amendment violations.

1. **Defendants' Motion**

Defendants argue in their Motion for Summary Judgment that we should enter judgment in their favor on Plaintiff's Sixth Amendment claim because "any damages remedy necessarily implies the invalidity of his conviction." (Defs.' Mem. in Supp. of Mot. for Summ. J. at 1.) However, contrary to Defendants' assertion, a plaintiff may maintain a Sixth Amendment cause of action under § 1983 without "alleging or proving prejudice to his defense at trial." Via v. Cliff, 470 F.2d 271, 275 (3d Cir. 1972). Indeed, the Third Circuit in the instant case explicitly

8

recognized that Sixth Amendment claims do not necessarily imply the invalidity of a plaintiff's conviction when it expressly stated: "[T]o the extent Prater can show that his Sixth Amendment claim does not imply the invalidity of his conviction, we will vacate the District Court's decision and remand for consideration of whether nominal and/or punitive damages could be warranted." Prater, 542 F. App'x at 138. Moreover, the law is plain that nominal damages are available even where no actual injury occurs, e.g., where interference with the right to assistance of counsel does not result in a wrongful conviction. Allah v. Al-Hafeez, 226 F.3d 247, 251 (3d Cir. 2000) (stating that nominal damages "'are the appropriate means of vindicating rights whose deprivation has not caused actual, probable injury.'" (quoting Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 308 n.11 (1986))). Similarly, punitive damages may be awarded "based solely on a constitutional violation, provided a proper showing is made" and need not be premised on an injury flowing from that violation. See id. at 251-52 (permitting punitive damages to be awarded where the plaintiff shows that the defendant's conduct was "'motivated by evil motive or intent'" or "'involve[d] reckless or callous indifference to a federally protected right of others.'" (quoting Coleman v. Kaye, 87 F.3d 1491, 1497 (3d Cir. 1996))).

We therefore reject Defendants' contention that judgment must be entered in their favor on Plaintiff's Sixth Amendment claim because a monetary judgment in Plaintiff's favor would necessarily imply the invalidity of Plaintiff's criminal conviction.[5] Accordingly, we deny

---

[5] The only authority that Defendants cite in support of this contention is a non-precedential Third Circuit Opinion, Telepo v. Martin, 359 F. App'x 278 (3d Cir. 2009), which they characterize as holding that a plaintiff's conviction is necessarily invalid any time that the plaintiff prevails on a Sixth Amendment claim arising out of the case giving rise to the conviction. Telepo, however, held only that the Sixth Amendment claims of the appellant in that case, if successful, would imply the invalidity of his conviction. Telepo, 459 F. App'x at 280-82. It did not hold, as Defendants contend, that all Sixth Amendment claims necessarily imply the invalidity of the claimant's

Defendants' Motion insofar as it seeks judgment in their favor on Plaintiff's Sixth Amendment claim.

### 2. Plaintiff's Motion

Plaintiff argues in his own Motion for Summary Judgment that we should enter judgment in his favor on his Sixth Amendment claims.[6] In order to prevail on his claim for nominal or punitive damages for a violation of his Sixth Amendment rights, Plaintiff must establish that Defendants "unreasonably burdened [his] opportunity to consult with his attorney and to prepare his defense." Benjamin, 264 F.3d at 187 (quotation omitted). Plaintiff has submitted evidence that (1) Defendant Commissioner Giorlo refused to put his criminal attorney on his approved phone call list because the attorney had a 610 area code (Pl.'s Exs. G & H); (2) Defendant Correctional Officer Lock failed to mail one letter to Plaintiff's lawyer (Pl.'s Resp. to Defs.' Interrogs. ¶ 3; Pl.'s Ex. F.); (3) he submitted a grievance to complain that the social worker would not permit him to call his attorney from her office (Pl.'s Ex. F); and (4) "continuous lockdowns" prevented his access to the law library, where he could make legal calls (Pl.'s Exs. J & K). However, at the same time, Defendants have submitted evidence that Plaintiff had two or three in-person visits with his criminal attorney during his incarceration. (See Pl.'s Dep. at 19.)

Under these circumstances, we conclude that there is a genuine issue of material fact as to

---

conviction.

[6] Not unlike Defendants, Plaintiff seems to misunderstand both the law and the Third Circuit's decision in this case insofar as he continues to argue that Defendants' interference with his Sixth Amendment right to counsel resulted in his wrongful conviction. (See Pl.'s Mot. for Summ. J. at 3 ("Defendants['] continuous interference with counsel caused plaintiff to lose his criminal trial . . . .").) Such arguments and claims are clearly barred by Heck v. Humphrey. As stated previously, however, Plaintiff may pursue nominal and/or punitive damages in connection with his claim that he was denied his Sixth Amendment right to assistance of counsel, irrespective of the result of his criminal trial.

whether Defendants violated Plaintiff's Sixth Amendment rights by unreasonably burdening his ability to consult with his criminal counsel and prepare his defense. On that basis, we deny Plaintiff's Motion for Summary Judgment insofar as it asks that judgment be entered in his favor on his Sixth Amendment claim.

>    B.  **First and Fourteenth Amendments Claim**

A pretrial detainee's constitutional right of access to the courts is embodied in the First and Fourteenth Amendments. Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (citing Lewis v. Casey, 518 U.S. 343, 346 (1996)). A defendant potentially violates this right of access when his "actions . . . inhibit[] [a pretrial detainee's] opportunity to present a past legal claim" by "interfer[ing] with and imped[ing]" the plaintiff's pursuit of a legal action. Id. at 205; Cohen v. Longshore, 621 F.3d 1311, 1317 (10th Cir. 2010). That said, not every condition or restriction that limits a pre-trial detainee's ability to pursue a legal action violates the constitution. Rather, a condition or restriction that is "reasonably related to a legitimate governmental objective" is constitutional. Bell, 441 U.S. at 539; see id. (stating that, where a condition or restriction is not reasonably related to a legitimate government objective, "a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon" a pretrial detainee). Moreover, in order to prevail on a right of access claim, a pre-trial detainee must establish "'actual injury, such as the loss or rejection of a legal claim,' as well as show that his lost or rejected legal claim is non-frivolous or arguable."[7] Saunders v. Phila. Dist. Attorney's

---

[7] Significantly, as the Third Circuit noted, where the plaintiff is a pretrial detainee, he is not limited to litigating claims that his right of access was impeded in connection with a challenge to his sentence and challenges involving conditions of confinement. Prater, 542 F. App'x at 138 (citing Lewis, 518 U.S. at 354-55). Thus, Plaintiff may properly claim that Defendants impeded his right to access the court in connection with his civil partition claim.

11

Office, 546 F. App'x 68, 72 (3d Cir. 2013) (quoting Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997), and citing Monroe, 536 F.3d at 205); see also Sanders v. Rose, 576 F. App'x 91, 94 (3d Cir. 2014) (explaining that, to establish a denial of his constitutional right of access to the courts, a plaintiff must prove that "'official acts . . . may . . . have caused the loss . . . of a meritorious case'" (quoting Christopher v. Harbury, 536 U.S. 403, 416 (2002)). A plaintiff does not establish a constitutional violation when he establishes only that he had a "'mere hope'" that he would prevail on the underlying claim. Schreane v. Holt, 482 F. App'x 674, 676 (3d Cir. 2012) (quoting Monroe, 536 F.3d at 205-06).

In light of this legal authority, the Third Circuit has instructed that we reassess on remand Plaintiff's First and Fourteenth Amendment right of access claim by "consider[ing] in no particular order, whether [Plaintiff] has established that (1) unreasonable official action denied him access to the courts to pursue his partition claim, and (2) that action caused the loss of a meritorious case." Prater, 542 F. App'x at 138-39 (citing Bell, 441 U.S. at 539, and Christopher, 536 U.S. at 414) (footnote omitted). Defendants argue in their Motion that Plaintiff has established neither of these requirements because: (1) Defendants' official actions that limited Plaintiff's right of access were reasonably related to a legitimate governmental objective, (2) Plaintiff has not proven that Defendants' actions caused him to lose his partition case, and (3) Plaintiff has failed to prove that his partition action was meritorious.

In his right of access claim, Plaintiff alleges that that he was precluded from using the prison library and contacting his civil attorney by telephone and mail, thereby violating his right of access to the courts in connection with his partition action. (See Am. Compl. ¶¶ 14-16.) As noted above, to succeed on this clam, Plaintiff must establish, among other things, that the partition

12

action that he allegedly lost was meritorious.

In order to prevail on his claim for partition, Plaintiff was required to prove that he had an ownership interest in the property he sought to partition. See 68 C.J.S. Partition § 41 ("The party seeking partition must have an ownership interest in the property sought to be partitioned."); Johnson v. Gaul, 77 A. 399, 399 (Pa. 1910) ("The indispensable prerequisite to [the] maintenance [of a partition action] is that the plaintiff be a joint owner with the defendant and as such entitled to a separation of his share and possession.").) While Plaintiff's partition Complaint alleged that Plaintiff held an equity interest in the property at issue in the action, he has submitted no evidence to support that allegation. (Partition Compl. ¶ 5.) Indeed, the only record evidence on this issue supports a conclusion that he did not have any equity interest, as Plaintiff admitted at his deposition that his name is on neither the property's deed nor its mortgage. (Pl.'s Dep. at 9.) Plaintiff has therefore failed to establish that his partition action was meritorious. See Sanders, 576 F. App'x at 94 (affirming dismissal of pretrial detainee's right of access claim where district court "was left to guess whether the [underlying] suit had any merit" (citing Christopher, 536 U.S. at 416)).

Because Plaintiff has failed to submit evidence from which we or a jury could conclude that his partition claim had merit, we conclude that Plaintiff cannot prevail on his right of access claim, and we need not address whether Plaintiff has also failed to establish that any denial of access was the result of "unreasonable" action. We therefore grant Defendants' Motion insofar as it seeks judgment in their favor on Plaintiff's right of access claim, and we deny Plaintiff's Motion insofar as he seeks judgment in his favor on that same claim.

**IV.    CONCLUSION**

For the foregoing reasons, we deny Plaintiff's Motion for Summary Judgment in its entirety and grant Defendants' Motion for Summary Judgment insofar as it seeks judgment in Defendants' favor on Plaintiff's right of access claim under the First and Fourteenth Amendments. At the same time, we deny Defendants' Motion insofar as it seeks judgment in Defendants' favor on Plaintiff's Sixth Amendment right to counsel claim.   An appropriate Order follows.

    BY THE COURT:

    /s/ John R. Padova, J.

    _____

    John R. Padova, J.